Austin Corbin, 2d, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Katharine I. Corbin, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 93974, 93975. Promulgated May 31, 1939.

*H. E. Fraser, Esq.,* for the petitioners.
*B. H. Neblett, Esq.,* for the respondent.

---

OPINION.

Kern: The sole question before us, identical as to each petitioner, another question raised on the petitions having been settled at the hearing by stipulation, is whether the losses sustained by each petitioner in 1934, of $10,842 on Spokane Valley Irrigation District bonds and of $3,120.31 on Trentwood Irrigation District bonds, are allowable as bad debts under section 23 (k) of the Revenue Act of 1934, or as capital losses under section 117 (f) of the same act, and, if the latter, therefore limited to $2,000 plus capital gains. The pertinent statutory provisions are set out in the margin.[1]

---

[1] SEC. 23. (k) BAD DEBTS.—Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction.

\* \* \* \* \* \* \*

SEC. 117. (a) GENERAL RULE.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

\* \* \* \* \* \* \*

30 percentum if the capital asset has been held for more than 10 years.

\* \* \* \* \* \* \*

(d) LIMITATION ON CAPITAL LOSSES.—Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or

Respondent contends that gains or losses sustained by a bondholder on the retirement of his bonds at less than their face value are, under section 117 (f) Revenue Act of 1934, capital gains or capital losses; but if it shall be held that such losses were bad debts, he argues that adequate proof of a charge-off is lacking; and, even conceding that a "mental" charge-off—that is to say, a subjective charge-off by intention without any overt act by the taxpayer—is proper, that the evidence here rebuts the existence of such an intention in 1934.

Since the first proposition, if sustained, will dispose of the case, we shall consider it first. In *Fairbanks* v. *United States*, 306 U. S. 436, the Supreme Court in affirming the court below (*Fairbanks* v. *United States*, 95 Fed. (2d) 294), assumed the validity of section 117 (f), Revenue Act of 1934, taxing "amounts received by the holder upon the retirement of bonds * * * as amounts received in exchange therefor", that is to say, as capital gains; but pointed out that the provisions had no retroactive effect.

There is no specific reference to bonds in section 23 (k) of the statute. However, article 23 (k)–4 of Regulations 86 (set out in full in the margin [2]) provides that "bonds, if ascertained to be worthless, may be treated as bad debts to the amount actually paid for them"—a survival of an earlier regulation. Cf. Regulations 69, art. 154; Regulations 74, art. 194. To the same effect see *Murchison National Bank*, 1 B. T. A. 617; *Samuel Bird*, 4 B. T. A. 259. The statute, by section 117 (f), on the other hand, clearly intends to treat the "retirement" of bonds as an "exchange" resulting in either capital gain or capital loss. There can be no doubt that the bonds in question here were "retired" within the meaning of the act, and consequently, the loss sustained on such retirement must be reckoned

---

exchanges. * * *
* * * * * * *

(f) RETIREMENT OF BONDS, ETC.—For the purposes of this title, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor.

[2] Art. 23 (k)–4, *Worthless bonds and similar obligations.*—Bonds, if ascertained to be worthless, may be treated as bad debts to the amount actually paid for them. Bonds of an insolvent corporation secured only by a mortgage from which on foreclosure nothing is realized for the bondholders are regarded as ascertained to be worthless not later than the year of the foreclosure sale, and no deduction for a bad debt is allowable in computing a bondholder's income for a subsequent year.

A taxpayer (other than a dealer in securities) possessing debts evidenced by bonds or other similar obligations can not deduct from gross income any amount merely on account of market fluctuation. If a taxpayer ascertains, however, that due, for instance, to the financial condition of the debtor, or conditions other than market fluctuation, he will recover upon maturity none or only a part of the debt evidenced by the bonds or other similar obligations and so demonstrates to the satisfaction of the Commissioner, he may deduct in computing net income the uncollectible part of the debt evidenced by the bonds or other similar obligations.

under section 117 (a), as specifically provided. Cf. *Pacific Employers Insurance Co.* v. *Commissioner*, 89 Fed. (2d) 186.

Petitioner contends, however, that the provision of the regulation and that of the statute in respect of bonds are not incompatible; that consequently, the irrigation district bonds were ascertained in 1934 to be worthless to the extent which we have found; and if any difference arises between the loss sustained on the determination of worthlessness in that year and the loss resulting from the retirement of the bonds in the next year, 1935, it can be adjusted in the latter year. But this contention overlooks the fact that petitioner's ascertainment of worthlessness was coincident with his acceptance of the retirement agreement. There may be situations in which the partial worthlessness of the bonds resulting from the obligor's financial condition will justify charge-off, in the year of such ascertainment, and where the corporation will in a later year determine to retire them at less than par; so that the two provisions for deduction of the loss will successively be brought into play and the relation of their operation be determined. Although such a situation would seem unlikely to arise, we may concede its possibility; but this concession can not persuade us to accept the application of two distinct and disparate methods of deduction in successive years, where the obligor's intention to retire the bond issue was clearly evidenced at the very time when the ascertainment of its financial condition would first have justified a partial charge-off of its obligations. Without deciding, therefore, that the two methods are mutually exclusive in all circumstances, we think they clearly were in the present instance; and that the capital loss deduction, foreseeable as a result of the bonds' retirement, could not be anticipated by a bad debt deduction for worthlessness; that this would defeat the intention of Congress in enacting section 117 (f) and can not be accomplished under the clear intendment of that subsection. We hold, therefore, that the losses on both lots of bonds were capital losses and were sustained in 1935 when the bonds were retired, and limited, as provided, in the amount of their deduction. Although the petitioners had done in 1934 what acts were necessary on their part to obtain payment of both the Spokane Valley and the Trentwood bonds by depositing them according to the respective agreements, it is not clearly shown that they thereby acquired the right in either instance to make an unqualified demand on the district for the agreed retirement amount.

In this view of the case we deem it unnecessary to discuss the question of charge-off. Since there is no issue as to the deduction in 1934 of the statutory capital loss sustained on the Trentwood bonds, the deficiency determined will be affirmed, and

*Decision will be entered for the respondent.*